UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MATILDE FLORES HAMILTON,                                   Case No. 14-10665 tl13

    Debtor.

## OPINION

    Before the Court is Wells Fargo Bank's motion for relief from stay, filed after Debtor stopped making her regular mortgage payments. Debtor asserts she was within her rights because she paid the full loan balance set out in her confirmed chapter 13 plan. The bank counters that its allowed proof of claim, not the plan language Debtor relies on, determines the issue. Having considered the relevant evidence and law, the Court concludes that the plan did not reduce the bank's claim. The stay relief motion therefore has merit.

I.     FACTS

    Debtor filed this chapter 13 case on March 10, 2014, seeking to prevent foreclosure of her house in Silver City, New Mexico. The bank holds a first mortgage on the house, securing a 30-year note with an original principal balance of $58,500. The contract interest rate is 8.375%; monthly principal and interest payments are $444.64.

    Debtor's bankruptcy schedules, filed April 2, 2014, listed her house at $29,942, and the bank's mortgage loan at $35,340. The only other scheduled debts were "unknown" amounts owed to the bank's foreclosure attorneys.

    On April 2, 2014, Debtor filed a Chapter 13 plan, in which she proposed making 58 monthly plan payments of $581.58. The Plan is based on the form used in this district. It contains the following:

AN ALLOWED PROOF OF CLAIM WILL BE CONTROLLING, UNLESS THE COURT ORDERS OTHERWISE. A CLAIM WILL BE ALLOWED UNLESS OBJECTED TO.

Section 2.

Objections to Claims

…

[T]o the extent a filed proof of claim is inconsistent with this plan or with any of the schedules or statements filed in this case, then and in that event the debtor reserves the right to object and to pursue any and all legal claims related to or arising out of … said claim.

Section 2.4.

Failure to Object to Confirmation Constitutes Acceptance of Proposed Treatment of Claim. To the extent that the valuation provisions of section 506 do <u>not</u> apply to any of the claims listed below, the creditor's failure to object to confirmation of the proposed plan shall constitute the creditor's acceptance of the treatment of its claim as proposed, pursuant to section 1325(a)(5)(A).[1]

Section 4.3.

Treatment of Claims. For purposes of the plan, the treatment of each claim is specified below. Treatment shall be one of the following.

(1) *Direct* - direct payment by the debtor under the terms of the original agreement between the debtor and the creditor;
(2) *In full* - payment in full of the allowed secured claim by the chapter 13 trustee through the plan;
(3) *Bifurcate* - payment of the value of the collateral by chapter 13 trustee through the plan based on the outcome of a separate motion to value the collateral which the debtor shall file, with the balance of the claims to be treated as a non-priority unsecured claim;

. . .

| Name of Creditor | Estimated Collateral | Collateral | Interest Claim Amt | Treatment | Rate | Entitled to Adequate Protection/Equal Monthly Payments Y/N |
|---|---|---|---|---|---|---|
| Wells Fargo Bank, NA | $8090.95 | 1517 N. Virginia St. Silver City, NM | | Direct | 8.375% | No |

*Wells Fargo entire loan balance as of 3-13-14 is $35,340.80.*[2]

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.
[2] Italics added.

…
    4.4.2    Debt Secured by Principal Residence. Except as otherwise provided in this plan, debtor will make all post-petition installment payments on debt secured by the principal residence in accordance with the terms of the contract.

    4.4.3.    Pre-petition Arrearages. Trustee will pay the pre-petition arrearages as set forth in an allowed proof of claim, with interest on the arrearages as set forth below, unless an objection to the proof of claim is filed and an order is entered modifying the arrearages amount and/or interest rate.

| Creditor | Collateral | Estimated Pre-Petition Arrearages | Interest Rate |
|---|---|---|---|
| Wells Fargo Bank, NA Home Mortgage | 1517 N. Virginia St. Silver City, NM 88061 | $27,249.85 | 3% |

Section 4.4.

The asserted loan balance figure of $34,340.80 (in italics) is the same figure as the unpaid principal balance of the loan on the petition date.[3]

In her Plan, Debtor proposed to make regular payments directly to the bank, and to pay the prepetition arrearage through the Plan.[4] The bank objected, arguing that the pre-petition arrearage was $33,414.46, not $27,249.85. On July 18, 2014, the bank filed a proof of claim for $57,739.14, which included its asserted pre-petition arrearage amount.

The Court confirmed the Plan on August 21, 2014. The decretal portion of the confirmation order provides in relevant part:

    2.    Debtor's plan payments shall be as follows: $581.58 each month for 2 months beginning April 10, 2014 through May 10, 2014 and $710.06 each month for 56 months for a total plan term of 58 months.

    3.    The trustee shall make distributions to Wells Fargo in the amount of its allowed secured mortgage arrears claim with interest at 0%.
…
    7.    Debtor is not entitled to a discharge in this case.

---

[3] *See, e.g.*, the Bank's proof of claim, p. 4. The "estimated collateral" amount ($8,090.95) is the difference between $34,340.80 and Debtor's pre-petition arrearage figure of $27,249.85.
[4] About $470 of each Plan payment was to be paid toward the arrearage.

Debtor never objected to the bank's proof of claim. She has made her monthly plan payments since April 2014. Debtor also made direct mortgage payments to the bank totaling $8,090.95 (the "estimated collateral" figure), and then quit.

On April 14, 2016, the bank filed a motion for relief from stay, based on Debtor's failure to make direct payments after August 2015.[5]

Debtor asserts that confirmation of the Plan reduced her total debt to the bank to $35,340.80. The bank counters that the Plan requires Debtor to pay the full amount in the bank's allowed proof of claim.

## II. DISCUSSION

### A. Construing the Plan.

Confirmed plans are interpreted "under the rules governing the interpretation of contracts." *Miller v. United States*, 363 F.3d 999, 1005–06 (9th Cir. 2004). *See also In re Heartland Steel, Inc.*, 389 F.3d 741, 744 (7th Cir. 2004) (ordinary rules of contract construction apply to confirmed plans); *In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006) (plan interpretation is analogous to the interpretation of a contract, although an abuse of discretion standard applies); *In re Western Integrated Networks, LLC*, 322 B.R. 156, 160 (Bankr. D. Colo. 2005) ("A chapter 11 plan is a contract between a debtor and creditors of the bankruptcy estate .... [that] must be interpreted according to general rules for contractual interpretation") (citations omitted).

### B. Ambiguity.

A confirmed plan is ambiguous if it is capable of more than one reasonable interpretation. *Heye v. Am. Golf Corp., Inc.*, 80 P.3d 495, 499 (N.M. App. 2003) ("[a] contract is ambiguous if

---

[5] The Court held a preliminary hearing on the motion on June 6, 2016. However, the final hearing was continued a number of times to accommodate Debtor's counsel's health issues.

separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning"); *Sanchez v. Nitro-Lift Technologies, L.L.C.,* 762 F.3d 1139, 1147 (10th Cir. 2014) (same). Generally, where an ambiguity exists courts consider extrinsic evidence to determine the parties' intent. *Presbyterian Healthcare Services v. Goldman, Sachs & Co.*, 122 F.Supp.3d 1157, 1185 (D.N.M. 2015) (collecting cases). If extrinsic evidence is unavailable or inconclusive, courts also apply rules of contract interpretation. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781 (1993) (in the absence of extrinsic evidence, "the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation"); *Sprint Nextel Corp.,* 822 F.3d at 534 (same); *In re Rafter Seven Ranches, L.P.,* 414 B.R. 722, 735 (10th Cir. BAP 2009) (bankruptcy courts can resolve ambiguity in court-approved settlement by applying rules of construction).

The Court finds the Plan's treatment of the bank's claim is ambiguous. First, the asserted loan balance of $35,340.80 conflicts with other Plan provisions regarding the allowance and payment of claims, in particular the statement that allowed proofs of claim will be controlling. Second, the $8,090.95 "estimated collateral" figure is far less than the value in Debtor's bankruptcy schedules, filed the same day as the Plan. Third, some of the language in Section 4.4 is hard to understand, as discussed below. Fourth, it would be illogical for Debtor to pay $35,340 for a house worth $8,090.

Given the ambiguity, the Court will examine the parties' evidence and traditional canons of construction to interpret the Plan.

    C.    <u>The Sample Plans</u>.

By consent of the parties, and to aid in the interpretation of Section 4.4 of the Plan, the

Court reviewed ten random chapter 13 plans filed in 2014 (the "Sample Plans").[6] The Sample Plans each include a table that materially conforms to the following:

| Creditor | Collateral | Est. value of collateral | Est. claim amount | Treatment | Interest rate | Entitled to Adequate protection/equal monthly payments Y/N |
|---|---|---|---|---|---|---|
| | | | | | | |

The tables in the Sample Plans follow the form plan table, i.e.:

| Creditor | Collateral | Value | Claim amount | Treatment | Interest rate | Monthly Payment? |
|---|---|---|---|---|---|---|
| | | | | | | |

The Plan follows the format of the Sample Plans and the district's form plan, with the changes noted in italics:

| *Name of Creditor* | *Estimated* Collateral | Collateral | *Interest* claim amount | Treatment | Rate | Entitled to Adequate protection/equal monthly payments Y/N |
|---|---|---|---|---|---|---|
| | | | | | | |

The change in the first column is innocuous. The change in the second column can only mean estimated collateral value, thereby switching columns two and three. Finally, the change in the fourth column must be a typographical error, with Debtor intending to say estimated claim amount, not interest claim amount. A literal interpretation does not make sense. Overall, the Court concludes that Debtor did not intend to change the standard table in any substantive way.

    D.    <u>Canons of Construction</u>.

The applicable Canons of Construction support this conclusion. The Restatement of Contracts, which is used by state and federal courts,[7] contains the following relevant contract

---

[6] Doc 2 in 14-10024; doc. 36 in 14-10295; doc. 3 in 14-10805; doc. 3 in 14-11147; doc. 10 in 14-11509; doc. 15 in 14-11672; doc. 4 in 14-12060; doc. 17 in 14-12404; doc. 12 in 14-12712; and doc. 4 in 14-13169.

[7] The Restatement is used by New Mexico courts when parties attach different meanings to the same contract terms. *See Chisos, Ltd. v. JKM Energy, L.L.C*, 258 P.3d 1107, 1111 (N.M. App. 2011); *Farmington Police Officers Ass'n v. City of Farmington*, 137 P.3d 1204, 1211 (N.M. App. 2006) (the substantive rules governing contract interpretation are summarized in the restatement). The Restatement also reflects federal common law. *See, e.g., In re Peanut Crop Insurance*

interpretation rules:

- Courts should interpret the contact as a harmonious whole, preferring an interpretation that gives a reasonable, lawful, and effective meaning to all terms (§ 203(a));
- Courts should interpret words in light of all the circumstances and the principal purpose of the parties (§ 202); and
- When choosing among reasonable meanings, the meaning is preferred that operates against the drafter (§ 206).

1. <u>The Plan Should be Interpreted to Comply with the Bankruptcy Code</u>. Ambiguous plans should be interpreted to comply with the Bankruptcy Code. *See In re Forklift LP Corp.*, 363 B.R. 388, 394, 398 (Bankr. D. Del. 2007) (unless a plan clearly takes them away, creditors are entitled to rely on rights granted by the Bankruptcy Code); *In re Jankins*, 184 B.R. 488, 492 (Bankr. E.D. Va. 1995) (as a matter of policy, ambiguous provision should be construed to comport with Bankruptcy Code); *In re Monclova Care Ctr., Inc.,* 254 B.R. 167, 173 (Bankr. N.D. Ohio 2000) (when "multiple interpretations of a plan are possible, courts should favor an interpretation that is consistent with the Bankruptcy Code over one that contravenes it.").

Section 1322(b)(2) provides that a chapter 13 plan may not modify the rights of home mortgage lenders. *See also In re Davis,* 188 Fed. Appx. 671, *8 (10th Cir. 2006) (affirming the bankruptcy court's holding to that effect). While a confirmed plan that violates § 1322 may bind a mortgage lender, *see United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010), an ambiguous plan should be interpreted to comply with, not violate, the Code. Adopting the bank's construction that the asserted loan balance is an estimate harmonizes the Plan with applicable law and local practice.

---

*Litigation,* 524 F.3d 458, 470-471 (4th Cir. 2008) (federal common law derives from principles of general contract law, including the Restatement); *Castle v. Caldera*, 74 F. Supp. 2d 4, 10 (D.D.C. 1999) (the Restatement "embodies" federal common law).

2. <u>The Plan Should be Interpreted as a Harmonious Whole</u>. Whenever possible, courts should construe contracts in a way that avoids creating conflict between provisions. *J.D. Kirk, LLC,* v. *Cimarex Energy Co.,* 604 Fed. Appx. 718, 726 (10th Cir. 2015) (adopting the interpretation that "considers all parts of the contract and avoids creating unnecessary conflict"); *Bank of N.M. v. Sholer,* 691 P.2d 465 (N.M. App. 1984) (contracts should be construed in a way that every word or phrase is given meaning).

Debtor's proposed interpretation of the $35,340.80 loan balance statement conflicts with at least three other sections of the plan:

- Section 2, which provides that a claim is allowed unless objected to, and that allowed claims are controlling unless the Court orders otherwise;
- Section 4.2, which defines "direct" payment of a claim as payment "under the terms of the original agreement between the debtor and the creditor;"[8] and
- Section 4.4.2, which requires Debtor to make all post-petition direct payments in accordance with the terms of the contract, unless otherwise specified in the Plan.

On the other hand, construing the $35,340.80 loan balance figure as an estimate gives effect to these sections and harmonizes the Plan.

3. <u>The Plan should be interpreted in light of circumstances and principal purpose</u>. The Court should interpret the Plan in light of the circumstances and the principal purpose of the parties. Restatement, § 203; *Mark V, Inc.*, 845 P.2d at 1235 (courts should interpret the contract in light of all circumstances surrounding its execution); *Pub. Serv. Co., of New Mexico v. Diamond D. Const. Co.*, 33 P.3d 651, 660 (N.M. App. 2001) (citing the Restatement); *First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.,* 412 F.3d 1166, 1171 (10th Cir. 2005) (ambiguous contract is interpreted in the light of all the circumstances known to the parties

---

[8] Debtor may be arguing that the Plan bifurcated the bank's claim, reducing the secured portion to the "estimated" $8,090 value of the house. That argument is contrary to Section 4.2, which separately addresses bifurcated claims. Debtor did not select the bifurcation treatment.

at the time of its execution).  Here, all chapter 13 practitioners know that a chapter 13 plan cannot be used to modify a home mortgage.  *See* § 1322(b)(2).  The most Debtor could achieve through the Plan was to pay her substantial pre-petition arrearage over time.  Given this, it would be unreasonable to interpret the Plan as attempting to achieve a result everyone knew violated the Bankruptcy Code.

In addition, the Court should consider the placement and meaning of neighboring words, which may give context to an ambiguous term.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 152 (2012) (discussing the maxim of noscitur a sociis, which expresses the notion that "a word may be known by the company it keeps").  The $35,340.80 figure is directly under the table describing the debt.  The sentence containing the figure apparently was added because there was no room under the "Interest Claim Amt" column.  Given the placement of the table and the text, the only logical interpretation is that the $35,340.80 loan balance figure was an estimate of the bank's claim, like those found in the Sample Plans.

    4. <u>The Plan Should be Construed against the Drafter</u>.  Finally, the Plan, like a contract, should be construed against the drafter.  Restatement § 206.  *See also In re Schellhorn*, 280 B.R. 847, 853-4 (Bankr. N.D. Iowa 2002); *In re Forklift LP Corp.*, 363 B.R. 388, 397 (Bankr. D. Del. 2007) (court construed the plan against the drafter); *In re Vidal*, 234 B.R. 114, 119 (Bankr. D.N.M 1999) (plan construed against drafter to protect rights of non-drafter). Debtor drafted the Plan.  The Court therefore will construe the ambiguity against Debtor.

### III. CONCLUSION

The Plan is ambiguous; the $35,340.80 loan balance amount could be construed as fixing the bank's claim amount, but also can be read as a mere estimate of the bank's claim.  After reviewing the Plan, the Sample Plans, and other evidence and considering applicable contract

interpretation principles, the Court interprets the Plan to require Debtor to pay the bank the full amount of its allowed proof of claim. Rather than immediately modifying the stay, however, the Court will enter a separate order requiring mediation to discuss a possible loan modification.[9]

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: April 27, 2017

Copies to:

Peter Keys
401 East 21st Street
Silver City, NM 88061

Karen Weaver
6501 Eagle Rock Ave. NE, #A3
Albuquerque, NM 87113

---

[9] Debtor asked the Court to order mediation to discuss a possible loan modification rather than grant stay relief, should it adopt the bank's construction. The bank did not oppose the request.